

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00306-CV

JAMES WETHERBE, PH. D., APPELLANT

V.

DEBRA LAVERIE, PH. D., APPELLEE

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2012-502,988, Honorable William C. Sowder, Presiding

August 8, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant James Wetherbe, Ph.D., and appellee Debra Laverie, Ph.D., are members of the faculty of Texas Tech University's Rawls College of Business. In 2012 Wetherbe sued Laverie alleging she slandered him in statements made to the university provost and at a faculty meeting. Laverie moved to dismiss Wetherbe's suit under the election of remedies provision of the Texas Tort Claims Act (TTCA), specifically section

101.106(f).[1]  Ultimately, the claims based on the alleged statements to the provost were resolved against Wetherbe while his remaining claim of slander at the faculty meeting was remanded to the trial court.[2]  Back in the trial court, and following a hearing, that claim was dismissed.  This appeal followed.  We will affirm the trial court's dismissal order.

## Factual Background

During the period relevant to this case, Laverie was senior associate dean of the Rawls College.  Asked her job duties, Laverie testified the job "relates to overseeing faculty matters."[3]  The record reflects also that Laverie had an oversight role for the International Masters of Business Administration program that the Rawls College then was developing.  Wetherbe's deposition testimony regarding that program contains the statement that Laverie was "instrumental in getting the thing launched . . . ."  Laverie's testimony likewise reflects that she became involved with the program at the request of the Rawls College dean, then during the spring of 2012 "turned the program over to [Dr. Steve Buchheit] to run."

On February 2, 2012, Laverie, Buchheit and the College's grant director, Argyres Pitsilides, gathered in Laverie's office for a meeting called by Laverie.  The meeting's purpose was to discuss plans to bring "an expert from Harvard to teach the case method for the IMBA Program" and to discuss "what faculty to invite to that seminar."  At the

---

[1] TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West 2019).

[2] *Laverie v. Wetherbe,* 517 S.W.3d 748, 750 (Tex. 2017) (op. on reh'g).

[3] She elaborated, "So to give you an example, I handle the dossiers being prepared properly for promotion and tenure; I work with the area coordinators when they recruit and hire faculty; I oversee some of our student services that we offer our students."

meeting, Laverie, Buchheit and Pitsilides discussed the seminar's attendees and finalized the Harvard team's agenda for the trip, which included detailing the team's day schedule.

Wetherbe's name came up during the meeting. According to Wetherbe's pleadings and the evidence favorable to his position, which we accept for purposes of this appeal, Laverie made a false statement to Pitsilides and Buchheit that Wetherbe wore a device in his ear that allowed him to eavesdrop on the conversations of others. Laverie further said she had been a victim of Wetherbe's electronic eavesdropping.

Analysis

Through his first and second issues Wetherbe argues the trial court erred by dismissing his case because Laverie acted outside the scope of her employment when she allegedly stated at the meeting that Wetherbe used an electronic listening device to eavesdrop on conversations.

A governmental employee's motion to dismiss under Civil Practice and Remedies Code section 101.106(f) is a claim of governmental immunity. *Franka v. Velasquez,* 332 S.W.3d 367, 371 n.9 (Tex. 2011). Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and may be asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26 (Tex. 2004). A plea to the jurisdiction is a dilatory plea functioning "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000).

We review de novo the ruling of a trial court on a plea to the jurisdiction as the existence of jurisdiction is a question of law. *Houston Mun. Emps. Pension Sys. v. Ferrell,*

248 S.W.3d 151, 156 (Tex. 2007). Review of the trial court's ruling on a plea to the jurisdiction begins with the live pleadings. *Miranda,* 133 S.W.3d at 226. A plaintiff must affirmatively demonstrate the trial court's jurisdiction. *Id.* "When a plea to the jurisdiction challenges the existence of facts alleged by the pleader to establish the trial court's subject-matter jurisdiction, the trial court must consider relevant evidence submitted by the parties." *Id.* at 227 (citing *Bland Indep. Sch. Dist.,* 34 S.W.3d at 555). This standard generally mirrors that applicable to a traditional motion for summary judgment. *Id.* at 228; TEX. R. CIV. P. 166a(c). Thus, the trial court may consider affidavits and other summary judgment-type evidence. *FKM P'ship v. Board of Regents of Univ. of Houston Sys.,* 255 S.W.3d 619, 628 (Tex. 2008). The court takes as true evidence favorable to the nonmovant and indulges every reasonable inference and resolves any doubts in the nonmovant's favor. *City of Waco v. Kirwan,* 298 S.W.3d 618, 622 (Tex. 2009). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda,* 133 S.W.3d at 227-28.

The TTCA provides a limited waiver of immunity. *Laverie,* 517 S.W.3d at 752 (citing TEX. CIV. PRAC. & REM. CODE § 101.023). It also contains an election of remedies provision which in relevant part provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f).[4] "By adopting section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct." *Garza v. Harrison,* 574 S.W.3d 389, 393-94 (Tex. 2019). Thus, before filing suit a plaintiff must decide "whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Laverie,* 517 S.W.3d at 752 (citing *Mission Consol. ISD,* 253 S.W.3d at 657). The Legislature did not purpose section 101.106(f) "to adjudicate the underlying tort claim but to quickly dismiss government employees when the suit should be brought against their employer." *Laverie,* 517 S.W.3d at 755.

Under the TTCA "'scope of employment' means the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5) (West 2019). "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex. 1994) (holding defendant

---

[4] Concerning section 101.106(f)'s requirement that suit could have been brought under the TTCA against the governmental unit, defamation is an intentional tort. *Univ. of Tex. Med. Branch at Galveston v. Hohman,* 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (op. on reh'g). And the TTCA does not waive immunity for intentional torts, TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2019); hence, there would have been no TTCA waiver of Wetherbe's defamation claim had he sued Texas Tech. However, "[b]ecause the [TTCA] is the only . . . avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be under [the TTCA] for purposes of § 101.106." *Mission Consol. ISD v. Garcia,* 253 S.W.3d 653, 657 (Tex. 2008) (internal quotation marks omitted). Thus, for the application of section 101.106(f), Wetherbe's suit could have been brought under the TTCA against Texas Tech.

officers were within the scope of their authority while conducting a high speed chase of a suspect because each was on duty, in a squad car, pursuing a suspect); *see Garza,* 574 S.W.3d at 401 ("Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing [her] job at the time of the alleged tort").

The scope-of-employment inquiry under section 101.106(f) is not concerned with the reasons motivating the complained-of conduct but whether the conduct fell within the general scope of the employee's employment. *Melton v. Farrow,* No. 03-13-00542-CV, 2015 Tex. App. LEXIS 1224, at *8 (Tex. App.—Austin Feb. 10, 2015, pet. denied) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE § 101.106(f)); *Cf. Laverie,* 517 S.W.3d at 755 ("An employee will of course sometimes have personal motives for performing her job a particular way, and a statement made or an act done may simultaneously fulfill a job responsibility while furthering an ulterior motive"). It is fundamentally objective; that is, whether the employee's job duties and the alleged tortious act are connected. *Garza,* 574 S.W.3d at 401 (citing *Laverie,* 517 S.W.3d at 753).

Wetherbe does not challenge Laverie's status as an employee of a governmental unit or that his suit could have been brought against the governmental unit, Texas Tech. Rather, Wetherbe argues "the issue is whether the trial court correctly found a connection between Laverie's job duties as Senior Associate Dean and the alleged tortious conduct, i.e., was the conduct itself 'pursuant to' Laverie's job responsibilities?" But in answering this question it matters not whether Laverie did her job well or poorly, or whether she did her job selfishly or altruistically. *Laverie,* 517 S.W.3d at 755; *Garza,* 574 S.W.3d at 401 (explaining for "purposes of section 101.106(f), the employee's state of mind, motives,

and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities").

Laverie's allegedly defamatory statements were made in her conversation with two Rawls College faculty and staff members, at a meeting at which one topic was which Rawls faculty members to invite to the seminar with the team of visitors from Harvard. The substance of her statements was Wetherbe's workplace conduct toward his Rawls College co-workers. Objectively, Laverie was performing her duties as senior associate dean with oversight over the IMBA program when she allegedly slandered Wetherbe at the February 2 meeting. *Laverie,* 517 S.W.3d at 756; *see Melton*, 2015 Tex. App. LEXIS 1224 (allegedly defamatory statements concerning professional engineer were made in the general scope of employment of defendant governmental board members; trial court properly dismissed plaintiff's case when he failed to substitute governmental employer for employees after employees filed section 101.106(f) motion to dismiss); *Hopkins v. Strickland,* No. 01-12-00315-CV, 2013 Tex. App. LEXIS 2982 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (mem. op.) (allegedly slanderous statements made by mayor about former police chief to prospective employer were within general scope of mayor's duties and mayor was entitled to dismissal of former police chief's suit under section 101.106(f)).

Wetherbe alternatively argues an ultimate fact issue remains in the jurisdictional determination because Laverie denies making the listening-device statement while Buchheit testified she made the statement. But, as we have noted, for purposes of our de novo review we accept as true the pleaded allegations and evidence favorable to Wetherbe, *Miranda,* 133 S.W.3d at 228, and therefore accept that Laverie made the

listening-device statement at the meeting, just as Wetherbe contends. Because the listening-device statement was uttered within the general scope of Laverie's employment, Wetherbe's first and second issues are overruled.

By his third issue, Wetherbe argues if we find his pleadings contain a curable jurisdictional defect then the trial court abused its discretion by dismissing the case without affording him the opportunity to amend his petition. Wetherbe accurately points out that a plaintiff should have the opportunity to correct by amended petition a defective but curable jurisdictional allegation before his suit is dismissed for want of jurisdiction. *Tex. A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 839 (Tex. 2007). We find, however, that rule has no application here. Wetherbe filed detailed pleadings and responded in opposition to Laverie's motion to dismiss with evidence. Laverie supported her motion with evidence and Wetherbe filed a surreply. The record is lengthy and includes nine depositions. Buchheit was deposed twice. We are not told, and can scarcely imagine, what material fact might have been omitted from Wetherbe's petition. Wetherbe's third issue is overruled.

## Conclusion

Because it is undisputed that Wetherbe could have brought his lawsuit against Texas Tech and Laverie is an employee of Texas Tech and because the evidence on the sole disputed issue of Laverie's request for dismissal under section 101.106(f) conclusively establishes Laverie acted within the general scope of her employment, Wetherbe's suit is against Laverie in her official capacity only. TEX. CIV. PRAC. & REM.

8

CODE ANN. § 101.106(f); *Laverie,* 517 S.W.3d at 756. The trial court did not err by dismissing Wetherbe's lawsuit. Its order of dismissal is affirmed.


James T. Campbell
Justice